IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-01994-PAB-KMT

JOHN MICHAEL ELMORE,

     Plaintiff,

v.

ARTISAN AND TRUCKERS CASUALTY COMPANY,

     Defendant.

_____

**ORDER**
_____

This matter is before the Court on plaintiff's Motion for Summary Judgment [Docket No. 19] and Defendant's Cross Motion for Summary Judgment [Docket No. 21]. The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

**I. BACKGROUND**[1]

On July 9, 2019, plaintiff was hit by a vehicle operated by an underinsured driver while standing next to his van. Docket No. 21 at 2, ¶ 1. Plaintiff was injured as a result of the collision and recovered $100,000 from the at-fault driver. *Id.*, ¶¶ 2-3. Plaintiff's van was insured by Progressive Auto Insurance Direct, and plaintiff received $250,000 in underinsured motorist ("UIM") benefits from Progressive. *Id.* at 3, ¶¶ 4-5.

Defendant, Artisan and Truckers Casualty Company, issued an automobile policy to Axxis Audio of Colorado ("Axxis"). *Id.*, ¶ 6. Plaintiff is the owner and operator of Axxis. *See* Docket No. 19 at 3, ¶ 7. Axxis's policy was in effect at the time of the

_____

[1] The following facts are undisputed unless otherwise indicated.

accident and provides UIM benefits for up to $100,000 for "each person, each accident."  Docket No. 21 at 3, ¶ 7.  An insured is "any person using or occupying [the] insured auto or a temporary substitute auto."  *Id.* at 4, ¶ 15.  Axxis is the named insured on the policy; plaintiff is listed as a "rated driver."  *Id.* at 3, ¶¶ 8-9.  The policy defines an "insured auto" as one that is specifically listed on the declarations page of the policy. *Id.*, ¶¶ 10-11.  The only vehicle listed on the policy is a truck, not the van plaintiff was standing next to at the time of the accident.  *See* Docket No. 21-2 at 2.  Plaintiff made a claim through Axxis's insurance policy for his injuries, which defendant denied.  Docket No. 19 at 3, ¶ 15.

On June 1, 2020 plaintiff filed suit in the District Court for El Paso County, Colorado.  *See* Docket No. 1-3 at 1.  Defendant removed the case to federal court on July 8, 2020.  *See* Docket No. 1.  Plaintiff brings two claims: (1) breach of contract for UIM benefits under the policy with Axxis and (2) statutory delay pursuant to Colo. Rev. Stat. §§ 10-3-1115, 1116.  *See* Docket No. 1-3 at 1-5.  The parties have filed cross-motions for summary judgment, each arguing that they are entitled to judgment as a matter of law based on the terms of the policy with Axxis.  *See* Docket Nos. 19, 21.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.

2

*Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

**III.  ANALYSIS**[2]

The parties bring cross motions for summary judgment, each making competing

legal arguments based on the language of the policy and the reasonable expectations

doctrine.  *See generally* Docket No. 19; Docket No. 21.  Accordingly, resolving both

motions requires answering two questions.  First, whether the language of the policy

excludes plaintiff from coverage.  Second, assuming it does, whether the reasonable

expectations doctrine nevertheless provides plaintiff coverage under the circumstances

of this case.[3]

**A.  Language of the Policy**

In Colorado, courts are to "apply principles of contract interpretation" when

reviewing insurance policies.  *See Auto-Owners Ins. Co. v. Csaszar*, 893 F.3d 729, 734

(10th Cir. 2018) (citations omitted).  Terms are given "their plain and ordinary

meanings" and, if the language is "clear and unambiguous on its face, it must be upheld

as written."  *Id.* (citations omitted).  A court may "neither rewrite an unambiguous policy

nor force a strained construction in order to interpret it against the insurer."  *Id.*

(citations and quotations omitted).  However, when an insurer restricts coverage, "the

---

[2] Because plaintiff's claims are based on state law, the Court applies Colorado law in resolving the motion.  *See Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995) ("In a case in which jurisdiction is founded on diversity, we apply the law of the forum state.")

[3] Defendant also argues that plaintiff's vehicle does not count as a "temporary substitute auto" under the terms of the policy.  *See* Docket No. 21 at 2.  However, plaintiff responds that he is not arguing that the vehicle may be considered as such, and, as a result, the Court does not address this argument.  *See* Docket No. 24 at 3 ("Plaintiff urges this argument is moot or irrelevant as plaintiff is not claiming to have coverage because the van was a 'temporary substitute auto.'").

4

limitation must be clearly expressed." *Id.* (citations omitted).  If the limitation provision is ambiguous, the policy must be construed in favor of coverage.  *Id.*  "A contractual term is ambiguous 'if it is susceptible on its face to more than one reasonable interpretation.'" *Am. Fam. Mut. Ins. Co. v. Hansen*, 375 P.3d 115, 120 (Colo. 2016) (quoting *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1059 (Colo. 2005)).

Here, the policy contains two categories of persons who are "insured."  *See* Docket No. 21-4 at 2.  First, if the "named insured" on the declarations page is a natural person, then an "insured" is one of three categories: (1) "you or a relative"; (2) "any person using or occupying your insured auto or a temporary substitute auto"; or (3) "any person who is entitled to recover damages covered by this endorsement because of bodily injury sustained by a person described . . . above."  *Id.*  Second, if the "named insured" on the declarations page is a "corporation, partnership, organization or any other entity that is not a natural person," then an "insured" is one of two categories: (1) "any person using or occupying your insured auto or a temporary substitute auto" or (2) "any person who is entitled to recover damages covered by this endorsement because of bodily injury sustained by a person described . . . above."  *Id.*

Here, Axxis is the only named insured on the declarations page, *see* Docket No. 21 at 3, ¶ 8; Docket No. 21-2 at 1, and Axxis is a business entity.  Docket No. 21 at 4, ¶ 15.  Accordingly, the plain language of the policy extends coverage only to the second category of named insureds, either a person "using or occupying" an "insured auto" or someone who was injured by a person using an "insured auto."  Docket No. 21-4 at 2. As relevant here, the policy defines an "insured auto" as "[a]ny auto specifically

described on the declarations page." *See* Docket No. 21-3 at 5. The only vehicle on the declarations page is a 1999 Mitsubishi Fe649, which the parties refer to as the "box truck." *See* Docket No. 21-2 at 2; Docket No. 21 at 3, ¶ 10. The Court finds that the plain language of the policy extends coverage only to those persons who are "using or occupying" the box truck.

Plaintiff, however, has a different reading. Plaintiff asserts that, because he is the sole owner of Axxis audio and because only a person, not a corporation, can receive UIM benefits under Axxis's policy, he qualifies as an insured and coverage must be extended to him, regardless of what vehicle he was driving. *See* Docket No. 24 at 6. This argument is unpersuasive. Plaintiff admits that the named insured on the policy is Axxis and that the only vehicle listed on the declarations page is the box truck. *See id.* at 2, ¶¶ 8, 10. Plaintiff provides no authority for the proposition that merely being the owner of a business extends that business's commercial automobile insurance to the owner for any vehicle he may be driving when the plain language of the policy specifically limits coverage to a particular vehicle. While a limitation in coverage must be "clearly expressed," if it is, then the limitation must be "upheld as written." *Csaszar*, 893 F.3d at 734. Here, the policy clearly limits coverage to injuries occurring while using or occupying the insured auto. *See* Docket No. 21-3 at 5; Docket No. 21-2 at 2; Docket No. 21 at 3, ¶ 10.

Plaintiff also argues that insurance benefits follow the person, not the vehicle, and that Colorado law requires that UIM benefits be extended to anyone who has liability insurance, regardless of what vehicle he or she may be driving. *See* Docket No.

6

24 at 11.  While plaintiff is correct that UIM benefits must be extended to "persons insured [under an automobile liability policy] who are legally entitled to recover damages from owners or operators of uninsured motor vehicles," Colo. Rev. Stat. § 10-4-609(1), the issue here is that plaintiff is not insured under the policy, Axxis is, along with anyone using or occupying the box truck.  Similar policy provisions have been upheld as consistent with the statutory mandate that UIM benefits be co-extensive with liability coverage.  *See Addison Ins. Co. v. Veverka*, – F. Supp.3d –, 19-cv-03008-RBJ, 2021 WL 1329380, at *5 (D. Colo. Feb. 23, 2021) ("But there is no question that Mr. Veverka is not the 'named insured' . . . the policy is instead in the name of his company. . . .  Mr. Veverka would also be covered had he been driving a 'covered auto' under the policy."); Philadelphia *Indem. Ins. Co. v. Cruz*, No. 18-cv-00622-RBJ, 2019 WL 2578310, at *4-5 (D. Colo. June 24, 2019) (concluding that a similar policy provision still provided meaningful coverage because, even if the corporation could not sustain damages, employees using the company vehicle could); *Farmers Ins. Exch. v. Anderson*, 260 P.3d 68, 75 (Colo. App. 2010) (declining to extend coverage under an analogous policy provision because "the truck involved here was not a 'covered auto.'").  Thus, while defendant is required to pay UIM benefits to the insured of the liability policy, such as Axxis and whomever may be using or occupying the box truck, defendant is not required to pay benefits to a person who is not an insured under the policy, such as plaintiff.[4]

---

[4] Plaintiff also argues that, because he is listed as a "rated driver," and the term "rated driver" is not defined, he must be provided coverage.  *See* Docket No. 19 at 10. While it is true that rated driver is not defined, plaintiff does not explain how being a "rated driver" on a policy that extends coverage to only one particular vehicle would

Nevertheless, plaintiff argues that the cases defendant relies on are inconsistent with the Colorado Supreme Court's decision in *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167 (Colo. 2001).  There, the named insured's son was in an accident while driving his motorcycle; the policy excluded those who were not driving a "car," defined as a four-wheeled automobile.  *Id.* at 168.  In analyzing Colorado's No Fault Act, the Colorado Supreme Court noted that the act requires an insurance provider to provide personal injury protection ("PIP") to: (1) the named insured; (2) relatives of the named insured; and (3) any one occupying a "described motor vehicle with the consent of the insured."  *Id.* at 171 (citing Colo. Rev. Stat. § 10-4-707(1)).  Furthermore, the statute required PIP for any insured operating "any motor vehicle."  *Id.* at 172 (emphasis omitted).  Thus, because the No Fault Act required coverage for relatives of the named insured, and for "any" vehicle," the Colorado Supreme Court reasoned that the insurance company must provide coverage to the son while driving the motorcycle.  *Id.* at 172-73.  *DeHerrera*, however, does not help plaintiff, as it "only stand[s] for the proposition that it violates Colorado public policy to provide partial UM/UIM coverage to those whom [insurers] provide full liability coverage."  *See Csaszar*, 893 F.3d at 738.  The policy here extends full coverage to Axxis and to anyone using or occupying the box truck.  And, pursuant to Colorado law, the policy also provides UIM benefits to the

---

somehow grant him coverage for any vehicle he drives so long as he is on company business.  Even if the lack of a definition for rated driver makes the term ambiguous, not every ambiguity results in coverage.  The ambiguity must result in the policy having more than one "reasonable" interpretation.  *Hansen*, 375 P.3d at 120.  It is not reasonable to interpret the policy, when read as a whole, as providing coverage to someone listed as a rated driver, whatever that may mean, regardless of what vehicle the rated driver is using or occupying when the policy defines both "insured" and "insured auto" to mean only those listed on the declarations page.

same class of persons it extends liability coverage to: anyone using or occupying the box truck.[5]

Accordingly, the Court finds that the plain language of the policy limits coverage to those who are using or occupying the box truck.  It is undisputed that plaintiff was using his personal van at the time of the accident, not the box truck.  As a result, the policy does not provide coverage to plaintiff.

### B.  Reasonable Expectations

Plaintiff contends that, even if the policy purports to limit coverage to those using or occupying the box truck, his reasonable expectations that he would be provided coverage means that the Court should extend coverage here.  The Court finds that, under the circumstances of this case, the reasonable expectations doctrine does not extend coverage to plaintiff.

In Colorado, "courts have honored the reasonable expectations of an insured where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue."  *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1050 (Colo. 2011).  The principle applies even when a provision "may not be ambiguous in a technical sense."  *Id.*  Courts must

---

[5] Plaintiff suggests that the policy "allows for others to seek (and be covered by) liability coverage in the event of an accident."  Docket No. 24 at 5-6.  While the policy does use the words "you or the person seeking coverage" in several places, there is nothing inconsistent about those terms.  *See* Docket No. 21-3 at 4.  Given that the policy extends coverage to anyone using or occupying the box truck, and "you" only refers to Axxis, *see id.* at 9, the policy contemplates that more than just Axxis might be seeking coverage.  And, even assuming that plaintiff had permissive use to the van, the van is not a covered auto and plaintiff is not the named insured.  *See* Docket No. 24 at 5-6 ("Those others, pursuant to Colorado Law, include permissive users of motor vehicles.").

construct the "whole policy," rather than any particular provision in isolation. *Id.* at 1051. However, "[t]he only relevant ambiguities under the doctrine of reasonable expectations are those that relate to the coverage the insured claims and reasonably expects, and which the insurer later denies." *Id.* at 1053 (citations omitted). In other words, even if ambiguities exist elsewhere in the policy, it is only ambiguities as to the specific coverage at issue that matter. *Id.*

Here, the relevant coverage at issue is UIM benefits. As described above, the UIM endorsement specifically limits coverage to any person using or occupying the box truck. *See* Docket No. 21-4 at 2. An ordinary person would reasonably read the provision limiting coverage to an "insured auto" as anyone using or occupying the box truck; there is nothing confusing or deceptive about this provision. *See Baily*, 255 P.3d at 1052 (finding that an ordinary, reasonable reader would understand the language "any prohibited use of the vehicle violates the agreement" as rendering the protections of the rental agreement unavailable to someone who violates the rental agreement). There is nothing about this language that would make an ordinary, objectively reasonable reader expect that an employee of Axxis would be covered, regardless of the vehicle that an employee was driving.

Plaintiff argues, as noted earlier, that the policy lists him as a "rated driver" on the declarations page, and that the term "rated driver" is ambiguous. Docket No. 19 at 8. However, even if the term "rated driver" is ambiguous, the UIM benefits page is not ambiguous – it clearly provides coverage only to those using or occupying the box truck. For example, in *Bailey*, the insured claimed that there was ambiguity in the

primary coverage offered by a rental car company.  *See* 255 P.3d at 1052.  The Colorado Supreme Court agreed that the provision was ambiguous, but nevertheless found that ambiguity irrelevant as to the insured's reasonable expectations because the coverage at issue was the excess-insurance policy.  *Id.* at 1053.  As to that portion of the policy, there was "no such ambiguous policy language," and the "only relevant ambiguities . . . are those that related to the coverage the insured claims."  *Id.*  Similarly, even if the lack of a definition of rated driver on the declarations page instills some ambiguity into the policy, there is no corresponding ambiguity as to the UIM endorsement.

Reasonable expectations may also be honored "where circumstances attributable to an insurer have deceived ordinary, objectively reasonable insureds into believing that they are entitled to coverage."  *Id.*  However, this doctrine "does not contemplate the expansion of coverage on a general equitable basis."  *Id.* at 1054 (citations omitted).  "Bare allegations" of expectations are insufficient, and an insured "must demonstrate through extrinsic evidence that its expectations of coverage are based on specific facts which make these expectations reasonable."  *Id.* (citations, quotations, and alterations omitted).  Plaintiff, however, has only provided bare allegations, arguing that he relied on defendant's agent when purchasing insurance, citing to several pages of his deposition.  *See* Docket No. 19 at 11.  Ignoring the fact that plaintiff failed to follow both the Court's Practice Standards and the Local Rules in entering these facts into the record – even after several admonitions, *see* Docket Nos. 15, 17, 23 – plaintiff's conclusory allegations are insufficient.  There is no indication that

plaintiff did not receive a copy of the policy before signing, the relevant exclusions were in fine print, or that there was a "concerted effort" to hide the exclusion. *Bailey*, 255 P.3d at 1056-57.  Even plaintiff's deposition testimony simply indicates that plaintiff took the advice of the insurance company in naming Axxis as the named insured, rather than himself, and that he believed he had coverage.  *See* Docket No. 19-13 at 51, 73. There is no indication the defendant took any action to deceive plaintiff.

The Court finds that, because nothing in the UIM policy, or the actions of defendant, would create reasonable expectations of coverage for plaintiff while driving his personal van, the reasonable expectations doctrine does not serve to extend coverage contrary to the plain language of the policy.  Plaintiff thus is not owed any UIM benefits under the Axxis policy, and his first claim for UIM benefits must fail.  As a result, defendant is entitled to summary judgment on plaintiff's first claim.

### C.  Unreasonable Delay or Denial

For plaintiff to succeed on his statutory claim for bad faith delay, he must first demonstrate that he was delayed an insurance benefit to which he was entitled.  *See Ramos v. State Farm Mut. Ins. Co.*, No. 19-cv-01634-KMT, 2020 WL 6134901, at *9 (D. Colo. Oct. 19, 2020) (citing *Vaccaro v. Am Family Ins. Grp.*, 275 P.3d 750, 756 (Colo. App. 2012)); *see also* Colo. Rev. Stat. § 10-3-1115(1)(a) (stating that an insurance company "shall not unreasonably delay or deny payment of a claim *for benefits owed to* . . . any first-party claimant" (emphasis added)).  In other words, in order for an insurance benefit to be unreasonably delayed, there must first be a benefit that can be delayed.  Because plaintiff is not entitled to UIM benefits under the terms of the policy,

defendant could not have unreasonably delayed plaintiff's benefits.  Accordingly, plaintiff's second claim for statutory delay fails, and defendant is entitled to summary judgment on that claim.

**IV. CONCLUSION**

For the foregoing reasons, it is

**ORDERED** plaintiff's Motion for Summary Judgment [Docket No. 19] is **DENIED**. It is further

**ORDERED** that Defendant's Cross Motion for Summary Judgment [Docket No. 21] is **GRANTED**.  It is further

**ORDERED** that judgment shall enter for defendant and against plaintiff on all claims.  It is further

**ORDERED** that, within 14 days of the entry of judgment, defendant may have its costs by filing a bill of costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.


DATED September 29, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge